UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X

UNITED STATES OF AMERICA            :

  - v -                              :

                                       S12 12 Cr. 576-08 (WHP)

JAVON JONES,                        :

                *Defendant.*    :

----------------------------------------------------X


**DEFENDANT JAVAN JONES' REPLY MEMORANDUM**


DAVID GORDON, ESQ.
Attorney for Defendant
   *Javan Jones*
148 East 78th Street
New York, NY 10075
Tel: (212) 772-6625

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X

UNITED STATES OF AMERICA            :

  - v -                                               :

                                                      S12 12 Cr. 576-08 (WHP)

JAVON JONES,                                      :

                       *Defendant.*     :

---------------------------------------------------X

**DEFENDANT JAVAN JONES' REPLY MEMORANDUM**

This Reply Memorandum is submitted on behalf of Javan Jones, to reply to the government's Sentencing Memorandum filed on February 21, 2013. For the reasons discussed below as well as those discussed in the original Javan Jones' Sentencing Memorandum, it is respectfully submitted that a sentence of ten years' imprisonment followed by a five year' term of supervised release is warranted considering all the required factors listed in 18 U.S.C. § 3553(a), and the requirement that your Honor impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).[1]

<u>The Offense Conduct</u>

In his plea to count one of the indictment, Mr. Jones acknowledged that as part of his membership in what the government called the Courtlandt Avenue Crew he sold crack

---

[1] It is respectfully submitted that the 10-year statutory mandatory minimum sentence is greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). However, it is the minimum sentence available. *See* 18 U.S.C. § 3553(a)(3) and 21 U.S.C. § 841(b)(1)(A).

cocaine, and that during the time of his involvement the conspiracy was responsible for the distribution of between 280 and 840 grams of crack cocaine [Count 1, Racketeering Act 7, and Count 15], and that he conspired or agreed with others to murder members of a rival gang based at Maria Lopez Plaza (the "Maria Lopez Crew," also known as the "Young Gunnez," or "YGz" [Count One, Racketeering Act 5A]. However, contrary to the government's Sentencing Memorandum claim he did not actively participate in any violent activities in furtherance of that murder conspiracy.

The government makes two serious allegations in its Sentencing Memorandum: (1) that on January 25, 2011, that Javan Jones and Toshnell Foster had intended to use the gun the police had seen in the possession of Foster to retaliate against members of Maria Lopez Plaza crew for the murder of Dykeem Etheridge, a GFC associate the previous day believed by GFC members to have been committed by members of the "YGz" gang based at nearby Maria Lopez Plaza; and (2) that on September 8, 2011, Javan Jones participated in the accidental shooting of Jing Jiang, an innocent bystander, who was shot during an attempt to murder members of the Maria Lopez Plaza Crew.

With respect to the first allegation, whatever Toshnell Foster of Javan Jones may have said to Aubrey Pemberton at the time they received the gun, and whatever Javan Jones may have said afterwards to Pemberton, Anthony Crocker or any other members of the GFC, there is no evidence that either Toshnell Foster or Javan Jones actually went to the YGz's turf looking to retaliate or that they ever used that gun to retaliate against members of the YGz. Although the government cites testimony that Javan subsequently admitted to both Aubrey

-2-

Pemberton that he and Tosh had gone to Morris Avenue with the gun, and subsequently admitted to Anthony Crocker that he and Tosh had gone to Mott Haven and Maria Lopez to look for YGz, the arresting officers saw them nowhere near either area. Nor did any other police officers see them in either area that day.

Had they gone to Maria Lopez Plaza crew's turf intending to retaliate, they surely could have found one or more members of YGz and retaliated. Javan's purported statements to Pemberton and Crocker, if true, meant that after receiving the gun at Pemberton's home on Park Avenue between 156th Street and 158th Street, they went all the way south to Mott Haven Houses, which is on 141st Street, and then back north all the way to 158th Street and Concourse Village West, where they were arrested by the police. That they would travel such long distances with a gun seems highly unlikely. Thus, even if Javan had made such statements to Pemberton and Crocker he might very well have been puffing, claiming to have gone to Maria Lopez turf to retaliate, merely to impress other members of the gang.

With respect to Pemberton's claim that Javan had given the gun to Toshnell on Morris Avenue, that makes no sense as, if true, there would have been no reason for Toshnell to be showing Javan the gun subsequently on the street, as the police witnesses testified.

All of this supports Tosh's post-arrest statements that he really had the gun for protection because of what had happened the day before,[2] and not to retaliate against the Maria Lopez Crew. It suggests further that Tosh's and Javan's post-arrest statements that

---

[2]Tosh and others had been chased into a deli by rival gang members and locked themselves and hid in a storage room until it was safe to come out. During the incident rival gang members had shot and killed Dykeem Etheridge.

they were heading towards Criminal Court [on 161st Street][3] was also true.  What is important for your Honor to consider is that neither Toshnell nor Javan used that gun against anyone, that there was no evidence that they actually intended to use that gun to retaliate, and the fact that Javan did not run when ordered to stop by the police.

The government's claim that Javan Jones was involved in the September 8, 2011, shooting of Jing Jiang [the Chinese restaurant deliveryman], a crime that he was not charged with having commited, was based solely upon the testimony of Aubry Pemberton. Pemberton testified that he went to the scene with SB, Hump, Melly, Capo [Javan Jones] and Walt. T. 1559, 1571.  Yet Pemberton's own testimony and the surveillance videos suggest that Javan was not present.  In the first video [title one, 510A], Pemberton could only identify himself. T. 1570.  In the second video [title two, 510A], he recognized himself, Hump (T. 1577), Melly, SB and Walt (T. 1577).  Four minutes later on the video he could identify Walt (T. 1577), himself running (T 1578), SB and Hump running with him (T. 1578).  On the lat file in 510A he could only identify SB.  Later in that clip he recognized himself, Melly and Hump (T. 1579).  However, he was unable to see Javan Jones in any of the surveillance videos.  That was probably because Javan was not there.  Even if he had been there, however, there was no evidence to the effect that he knew that there would be a shooting.  According to the trial testimony, that was planned only by Aubrey Pemberton and Melvin Colon.  As your Honor instructed the jury, mere presence at the scene of a crime is not enough to

---

[3]Javan stated that he was on his way to the Bronx courthouse and was going to meet his girlfriend [as she was going to give him money to pay fines he owed] to take care of fines he had.

establish guilt.[4]   The government has not presented any evidence that Javan chose to be present where any of the gang's acts of violence occurred.

The History and Characteristics of the Defendant - 18 U.S.C. § 3553(a)(1)

As this case represents Mr. Jones' first criminal conviction, and given his young age, his many good characteristics and family support as expressed in the many letters written in his support attached to the original Sentencing Memorandum, I agree with probation that Javan has the potential to learn from his error in judgment and still lead a law-abiding life and should be afforded the opportunity to do so.  The government has not presented any arguments, nor can it, as to why a ten year' sentence is not sufficient to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

Unwarranted Disparity

The government argues that because Javan Jones will be the first defendant to be sentenced, your Honor need not be concerned about unwarranted disparity.  That is not true. The government has asked that Toshnell Foster be sentenced within his guideline range of 63 to 78 months.  If your Honor imposes that sentence, or a lesser sentence as urged by his counsel, the disparity between such sentence and a ten year sentence for Javan Jones will not be unwarranted as it is required by the statutory mandatory minimum.

However, I respectfully submit that any sentence imposed upon Javan Jones greater than ten years will  create unwarranted disparity.  Although the fact that Javan sold crack and

---

[4]Although Walter Aponte was present, he was not charged with participating in this shooting.

Toshnell did not, justifies some disparity, the government's request that Javan be sentenced to at least 135 months' imprisonment, twice the sentence [at least 68 months' imprisonment] it urges your Honor to impose upon Toshnell, is unwarranted.  The fact that Javan has no prior convictions, whereas Toshnell has several prior convictions, three of which the government agreed he should not receive criminal history points for despite two of them [a robbery and a weapons possession] occurring long before the charged racketeering conspiracy commenced, suggests that Javan's sentence should not be more than twice as long as Toshnell's unless such disparity is required by the mandatory minimum.

Conclusion

For all the reasons discussed above and in the original Sentencing Memorandum, I respectfully request that your Honor sentence Mr. Jones to ten years' imprisonment, followed by five years' supervised release, the minimum sentence permitted, despite that fact that it is greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

Dated:        February 27, 2013
              New York, New York

                                        Respectfully submitted,


                                        ___/s/_____
                                        David Gordon
                                        Attorney for Defendant
                                          *Javan Jones*
                                        148 East 78th Street
                                        New York, NY 10075
                                        (212) 772-6625